UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROXANA VOLYNETS, *as next friend of* )
*minor plaintiff, MV*, )
 )
    *Plaintiff*, ) Case No. 1:24-CV-168
 )
v. ) Judge Curtis L. Collier
 ) Magistrate Judge Michael J. Dumitru
BRADLEY COUNTY, *et al.*, )
 )
    *Defendants.* )

## **M E M O R A N D U M**

Before the Court is a joint motion to approve a proposed settlement of the claims of the minor Plaintiff, MV, against Defendants Bradley County, Tennessee, the City of Cleveland, Tennessee, and Willie Espinoza, Jr. (Docs. 34, 36.) The Court conducted a sealed hearing on the parties' joint motion on November 12, 2025. (Doc. 45.)

**I.  FACTS**

Plaintiff alleges that when he was a sophomore at Bradley Central High School, his girlfriend, AE, sent harassing messages to a third student using AE's own phone and MV's phone. Defendant and School Resources Officer Willie Espinoza of the Cleveland Police Department determined through his investigation that it was AE who sent the messages through MV's phone, and not MV. Officer Espinoza nevertheless brought a delinquency petition against MV for harassment; the affidavit supporting the petition said it was AE who had sent the messages and did not describe any conduct by MV himself. (Doc. 1-1 at 2.) MV was arrested in the school

lunchroom and held in a secure facility for three days, including being shackled when brought into court.

Plaintiff further alleges that intake officers at the Bradley County detention facility should have known that the allegations in the delinquency petition did not support detention. AE, who was detained nearby, also told officers that it was she, and not MV, who had sent the messages. MV made a self-harm or suicide attempt while detained. MV was released on March 30, 2023, and the petition was dismissed on May 9, 2023. MV continues to have "signs of serious mental and emotional distress" since his release.

Plaintiff alleges municipal liability by the City of Cleveland and by Bradley County. Plaintiff alleges the City of Cleveland has a policy of "guilt by association," allowing officers to charge one juvenile for conduct committed by another. Plaintiff alleges Bradley County has policies of "shock incarceration" against minors, incarceration without allegations of an offense, and failure to train its juvenile-detention intake officers.

Plaintiff filed a complaint on May 14, 2024, and filed an amended complaint on June 20, 2024. (Docs. 1, 10.) Plaintiff asserts causes of action under 42 U.S.C. § 1983 against Officer Espinoza for unlawful prosecution; against Officer Espinoza and the City of Cleveland for false arrest; and against Bradley County for illegal pretrial incarceration in violation of his rights to procedural and substantive due process. The Court conducted a scheduling conference on August 29, 2024. (Doc. 20.) On April 30, 2025, Plaintiff filed a motion to compel discovery and for entry of a protective order. (Doc. 22.) Defendants responded on May 14, 2025 (Docs. 23, 24), and Plaintiff replied on May 21, 2025 (Docs. 25, 26).

2

On August 14, 2025, Plaintiff and Bradley County filed their joint motion stating that they have entered into a confidential settlement agreement that contemplates a payment to MV in settlement of all claims and asking for the Court's approval. (Doc. 34.) Plaintiff's counsel seeks fees of 40% of the settlement amount based on a contingency-fee agreement signed by MV's mother. The joint motion is supported by declarations from two of Plaintiff's three attorneys. (Docs. 34-1, 34-2.) On October 31, 2025, the Court issued an order noting, among other things, that the Court could not consider the contingency-fee agreement in determining the reasonableness of counsel's fee request because Plaintiff is a minor. (Doc. 41.) In response, Plaintiff filed a declaration by Kyle Mothershead, an attorney not associated with the case, opining that a 40% fee is reasonable here, along with a copy of the contingency-fee agreement between Ms. Volynets and counsel. (Docs. 43-1, 43-2.)

At the conclusion of the hearing, the Court announced that it approved the settlement, with the exception of the question of attorney fees, on which it would reserve decision. (*See* Doc. 45.) The Court further announced that it would disregard the contingency agreement and instructed Plaintiff to file additional information regarding the attorney fees, including who else spent time on the case and what that person's rate would be. In response, Plaintiff filed a detailed statement of time entries from April 15, 2024, through November 12, 2025, including time entries for attorneys Wesley Clark ($450 per hour), Sarah Mansfield ($375 per hour), Frank Brazil ($450 per hour), and Paul Rudolph ($350 per hour). (Docs. 46, 46-1.) The cumulative number of hours was 182.4, with a total calculated amount of $74,322.50. (Doc. 46-1 at 12.) The documentation also notes the expenditure of $405 in court filing fees and $470 for service of process. (*Id.* at 12, 14–15.)

3

Case 1:24-cv-00168-CLC-MJD   Document 47   Filed 02/27/26   Page 3 of 14   PageID #: 317

## II.     STANDARD OF REVIEW

When a settlement agreement disburses ten thousand dollars or more to a minor, the Court must review and approve the settlement at a hearing in accordance with Tennessee law. Tenn. Code Ann. § 29-34-105(a)(1); *see also J.O. by Obitts v. Bledsoe Cnty. Bd. of Educ.*, No. 1:15-cv-329, 2017 WL 1533541, at *1 (E.D. Tenn. Apr. 4, 2017) (citing *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011)).

The court must make an independent decision about whether a settlement is in the best interest of the minor. *Thrivent Fin. for Lutherans v. Camp*, No. 1:15-cv-146, 2015 WL 9587728, at *1 (E.D. Tenn. Dec. 30, 2015). The court also must determine what is "fair and reasonable" compensation to the attorney. *J.O. by Obitts*, 2017 WL 1533541, at *1 (quoting *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673 (6th Cir. 1988)). Finally, the court "has the discretion to determine whether the settlement proceeds are to be paid to the minor's legal guardian or held in trust by the court until the appropriate time." Tenn. Code Ann. § 29-34-105(c).

## III.     ANALYSIS

The Court must make three determinations: (1) whether the settlement is in the best interest of MV; (2) what is fair and reasonable compensation to MV's attorneys; and (3) whether the proceeds should be paid to Ms. Volynets as MV's legal guardian or held in trust by the Court for an appropriate length of time. *Supra* § II. The Court concluded during the hearing that the settlement is in MV's best interest and it is in MV's best interest for the settlement proceeds to be paid to Ms. Volynets as MV's custodial parent and legal guardian. Thus, the only question remaining is whether the proposed compensation to MV's attorneys is fair and reasonable.

4

In determining what constitutes fair and reasonable compensation to an attorney, a trial court must consider the ten factors set out in Tennessee Rule of Professional Conduct 1.5, which apply regardless of the age of the client. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 185 (Tenn. 2011); *see also Thrivent Fin.*, 2015 WL 9587725, at *1–2. That non-exclusive list of factors is:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent;
>
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
>
> (10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a). When the client is a minor, the trial court should "rigorously analyze" the factors given the court's "special responsibility to protect minors' rights and best interests." *Wright*, 337 S.W.3d at 185. At the same time, the trial court must ensure the attorney "receive[s] sufficiently reasonable fees to ensure that [attorneys] have the necessary incentive to accept such cases in the future." *Id.*

5

A lodestar computation consists of "multipl[ying] the number of hours that the attorney has reasonably expended on the case times a reasonable or customary hourly rate," with the court making some discretionary adjustments to account for other relevant factors, such as the factors in Tennessee Rule of Professional Conduct 1.5. *Id.* at 179. The trial court is not required to "rely solely or even primarily on the lodestar computation in determining a reasonable attorney's fee involving minors." *Id.* at 180. But the amount of an attorney's time and labor still "will always be relevant in cases where the court is asked to determine a reasonable fee." *Id.* at 181. For example, "[k]nowing the number of hours spent on the case . . . enables the court, in its discretion, to cross-check the reasonableness of a fee by computing the effective hourly rate." *Id.* at 181 n.22. Therefore, the court may consider such a computation in its discretion. *Id.*

The existence of a contingency-fee arrangement does not control the analysis. Rather, in making its reasonableness determination, "the trial court *shall not consider* the fee agreement between the attorney and the minor's next friend, because any such agreement does not bind the minor." *Id.* at 185 (emphasis added). Thus, "the proper question is not whether the contract amount is reasonable but rather what the reasonable fee would be in the absence of a contract." *Id.* at 183. The risks the attorney faced when deciding whether to accept the case should be considered, however. *Id.* For instance, two of the factors encompass the degree of risk to the attorney, namely factors one (time and labor involved and novelty and difficulty of questions) and three (customary fee in locality for similar services). *Id.*

Thus, because "[s]ome cases present a greater or lesser risk of non-recovery than others, . . . a court should determine a reasonable fee based on the actual level of risk" in that particular

6

case. *Id.* at 183. This includes evaluating such potential barriers to recovery at the outset as a defendant's insurer's refusal to defend or a possible contributory negligence defense that could bar recovery. *Id.* at 183–84 (citing *Pellegrin v. Nat'l Union Fire Ins. Co. of Pittsburgh (In re Abrams & Abrams, P.A.)*, 605 F.3d 238, 248–49 (4th Cir. 2010)). Such factors could justify a higher fee. *Id.* at 184. On the other hand, where the risk of nonrecovery was low at the outset, such as in a case with compelling facts and limited uncertainty about liability, a lower fee may be appropriate. *Id.* at 184 (*citing Madison Cnty. Dep't of Human Res. V. T.S. ex rel. F.M.*, 53 So.3d 38, 58–59 (Ala. 2010)).

Here, Plaintiff's counsel requests a fee of forty percent (40%) of Plaintiff's recovery, the amount of which is known to the Court but which the parties seek to keep confidential. The Court considers the Rule 1.5(a) factors below.

### A. Time and Labor Required, Novelty and Difficulty, and Skill Required

The first factor the Court must consider encompasses "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(1).

The first case-specific consideration is the nature of the complaint. Plaintiff represented during the hearing that the most time-consuming requirement to date was the initial research and investigation to prepare the complaint, including what was necessary to state a claim regarding the alleged municipal custom of detaining children not subject to detention. Defendants also represented that this case is more complex than a typical § 1983 action because of the novelty of the interplay of the state statutes regarding juvenile detention on which the claim was based. Plaintiff's time records reflect approximately thirty hours in researching, conferring on, and

7

preparing the initial complaint, and approximately another ten hours researching and preparing the amended complaint in response to an issue raised by Defendants. (*See* Doc. 46-1 at 1–4.)

A second consideration is the parties' discovery dispute. This is represented on the docket by a fully briefed motion by Plaintiff asking the Court to compel discovery and issue a protective order to protect the privacy interests of third parties. (Docs. 22–26.) During the settlement hearing, Plaintiff noted the discovery dispute as one of the factors contributing to the expense of litigating the case. Plaintiff's time records reflect approximately twenty-five hours reviewing the relevant discovery requests and researching and preparing the briefing on the motion to compel and for a protective order, not including the time spent on preparing written discovery requests, preparing responses to Defendants' discovery requests, or preparing for depositions. (*See* Doc. 46-1.) During the hearing, Defendants also represented that the discovery dispute was time consuming.

A third consideration is the stage of the litigation. As Plaintiff noted during the hearing, the case did not include expert discovery or proceed to trial. Rather, the parties entered into a settlement before engaging any experts, deposing any witnesses, preparing dispositive motions, or preparing for or commencing trial.

The Court must also evaluate the degree of risk in the case and any potential barriers to recovery at the outset. *See Wright*, 337 S.W.3d at 183. Neither party identified any degree of risk or potential barriers to Plaintiff's recovery at the outset of the litigation, other than the novelty of the issues and the extra time required to prepare and amend the complaint given the lack of clarity in some of the relevant state statutes. For example, there was no indication of a particular defense that was likely to bar recovery or of a refusal by any Defendant's insurer to defend the case. *See*

*id.* at 183–84. And the central facts of the case, namely MV's detention and the contents of the affidavit supporting the petition for delinquency, do not appear to have been subject to any significant dispute. This case thus appears to be one with somewhat compelling facts and limited uncertainty about liability, in which a lower fee may be appropriate. *See id.* at 184.

The Court next considers the lodestar calculation. *See id.* at 181 n.22. Plaintiff has presented a time record of 182.4 hours for a total putative fee of $74,322.50. (Doc. 46-1 at 12.) For the 182.4 hours submitted, the effective hourly rate would be $407.47 per hour.[1] As will be discussed in Section III(C) below, this hourly rate is within a reasonable range for a case of this nature in this locality. Moreover, the number of hours is not, on its face, unreasonable. At the hearing, Defendant's counsel represented that Defendant's legal team, including partners, associate attorneys, and support staff, had spent more than 160 hours on the case.[2]

The Court also concludes, however, that not all of the time on the statement provided by Plaintiff would have added value for Plaintiff, and not all of that time would necessarily have been billed to Plaintiff in the regular course of a non-contingent representation. For example, a law firm would not always find it reasonable or appropriate to bill a client in full for a strategy conference among four attorneys lasting 1.3 hours.[3] (*See* Doc. 46-1 at 10 (reporting four-attorney conference

---

[1] The Court has also calculated the effective hourly rate for a 40% contingency fee on the amount set out in the Confidential Settlement to determine whether it results in reasonable guidance for an appropriate fee in this case, and finds that it does not.

[2] Support staff, of course, would bill at a lower rate than attorneys, if at all.

[3] To be clear, there is nothing wrong with attorneys conducting such conferences or recording them in a timekeeping system. Moreover, on the dates of the relevant conferences, Plaintiff's attorneys were, albeit mistakenly, expecting to collect a contingency fee rather than an hourly fee. The Court notes these matters only as part of its analysis of whether the amount of

9

on May 15, 2025, for a subtotal of $2,112.50); *see also id.* at 9 (reporting three-attorney conference of 1.1 hours on May 13, 2025, for a subtotal of $2,112.5).) In most cases, a law firm would choose not to bill every attorney's time for such conferences. Similarly, it did not necessarily add value for Plaintiff to have more than one attorney travel to and appear for the settlement hearing, and the costs of a second attorney for such a hearing would not necessarily be passed on to an hourly client. (*See id.* at 12 (reporting 5.4 hours and $2,430 for Mr. Clark to attend hearing and 5.2 hours and $1,950 for Ms. Mansfield to attend hearing).) As another example, the 1.7 hours and $690 reported for the preparation of Mr. Mothershead's declaration did not add any discernible value for Plaintiff, as the Court had already informed Plaintiff that it could not, under the controlling law, consider the contingency-fee agreement. (*See* Doc. 41.)

Considering the time and labor required in this case, which proceeded through pleadings and into written discovery, with a pending dispute over discovery, and a total calculated investment by counsel of $74,322.50, and considering the novelty of the legal questions involving juvenile detention, the lack of significant known obstacles to recovery, and the relatively undisputed nature of the facts, balanced with the need to ensure an adequate incentive to attorneys to accept cases like MV's, the Court concludes that the first factor supports a fee of $70,000.

### B. Likelihood of Preclusion of Other Employment

The second factor the Court must consider is "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(2). Mr. Clark's declaration notes that "[w]orking

---

time reflected on Plaintiff's report is an appropriate guide for a reasonable fee in this matter.

10

on any case incurs a significant opportunity cost," and his office turns away many viable cases. (Doc. 34-1 ¶ 6). He does not address the preclusion of other employment by this case in particular. He also does not explain what Plaintiff or Ms. Volynets would have known about that preclusion of other employment, and the Retainer Agreement (Doc. 43-2) does not mention the question. This factor therefore does not support a higher-than-normal fee for the representation.

### C. Customary Fee Charged in Locality

The third factor the Court must consider is "the fee customarily charged in the locality for similar legal services." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(3). As with the first factor, this factor includes consideration of the degree of risk to the attorney. *Wright*, 337 S.W.3d at 185.

The parties have provided information on the relevant attorneys' actual customary fees, but little information on the customary hourly fee for such work in the locality in general. Mr. Clark's declaration notes that his rate has been approved at $450 per hour in other cases. (Doc. 34-1 ¶ 7.) Ms. Mansfield's declaration identifies her customary non-contingent rate as $375 per hour. (Doc. 34-2 ¶ 6.) The remainder of the three declarations on fees address only the reasonableness of a 40% contingency fee in similar cases. (Docs. 34-1, 34-2, 43-1.) The Court cannot rely on the existence of a 40% contingency-fee arrangement in this case. However, the fact that such cases are typically taken on a contingent basis indicates a higher degree of risk in such cases in general.

Based on the Court's knowledge of fees in the Eastern District of Tennessee in similar cases, the Court concludes that the hourly fees of $450 per hour for Mr. Clark and Mr. Brazil, $375 per hour for Ms. Manfield, and $350 per hour for Mr. Rudolph are reasonable.

### D. Amount Involved and Results Obtained

The fourth factor the Court must consider is "the amount involved and the results obtained." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(4). The Complaint does not allege or demand a specific amount of damages, alleging instead the existence of mental and emotional distress, a deprivation of MV's constitutional rights, injury to his reputation, legal expenses related to defending the juvenile petition, and past and future medical expenses. (Doc. 10 ¶ 110.) The Court does not have any information on the amount of any medical expenses. However, the results obtained based on the amount in the confidential settlement agreement appear to be in MV's best interest given the information before the Court.

### E. Time Limitations

The fifth factor the Court must consider is "the time limitations imposed by the client or by the circumstances." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(5). The parties did not present any evidence on this factor, and no unusual limitations are apparent to the Court from the case file. This factor therefore does not support a higher-than-normal fee for the representation.

### F. Nature and Length of Professional Relationship

The sixth factor the Court must consider is "the nature and length of the professional relationship with the client." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(6). In the absence of evidence to the contrary, and given the nature of this case, the Court assumes this is counsel's first time representing MV. This factor is neutral on the fee amount that would be reasonable for the representation.

## G. Experience, Reputation, and Ability of Lawyer

The seventh factor the Court must consider is "the experience, reputation, and ability of the lawyer or lawyers performing the services." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(7). Mr. Clark's declaration recites his qualifications and experience, including a J.D. in 2013, experience in civil-rights litigation, and a list of successful cases he has worked on. (Doc. 34-1.) Ms. Mansfield's declaration recites her qualifications and experience, including a J.D. in 2018 and experience in civil-rights and other litigation. (Doc. 34-2.) There is no declaration from Mr. Brazil or Mr. Randolph or any other information on their experience, reputation, or ability. Mr. Mothershead's declaration does not address the experience, reputation, or ability of any of the lawyers who have appeared for Plaintiff in the case. (*See* Doc. 43-1.)

## H. Whether Fee Is Fixed or Contingent

The eighth factor the Court must consider is "whether the fee is fixed or contingent." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(8). Because the Tennessee Supreme Court has stated that a contingency-fee agreement is not binding and should not be considered, *Wright*, 337 S.W.3d at 185, it appears this factor should receive little to no weight in the analysis.

## I. Prior Statements About Fees

The ninth factor the Court must consider is "prior advertisements or statements by the lawyer with respect to the fees the lawyer charges." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(9). The parties have presented no evidence on this factor. The contingency-fee agreement, for example, does not make any statements on a typical hourly rate. (*See* Doc. 43-2.) This factor is neutral on the fee amount that would be reasonable for the representation.

13

### J.     Whether Fee Agreement Is in Writing

The tenth factor the Court must consider is "whether the fee agreement is in writing." Tenn. Sup. Ct. R. 8, R. of Pro. Conduct 1.5(a)(10).  As a contingency-fee agreement, the parties' fee agreement was necessarily in writing.  However, because a contingency-fee agreement is not binding on a minor, this factor is entitled to little weight.  *See Wright*, 337 S.W.3d at 185.

## IV.    <u>CONCLUSION</u>

Considering each of the factors above and the circumstances of the case as a whole, with particular attention to the first factor, the Court concludes compensation to MV's counsel of $70,000 is fair and reasonable.  The Court reaches this conclusion mindful both of its obligation to protect MV's interests and the need to ensure that attorneys "have the necessary incentive to accept" cases like MV's in the future.  *See id.* at 183–85.

As the Court concluded during the hearing, the proposed settlement is in MV's best interest and it is appropriate for the settlement proceeds to be paid directly to Ms. Volynets as MV's custodial parent and legal guardian.  The Court therefore **GRANTS** the joint motion (Doc. 34) and **APPROVES** the proposed settlement of MV's claims, with attorney fees of $70,000, plus $405 in court filing fees and $470 for service of process.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/_____
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**